UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LEONARD MARCHETTA,

                            Petitioner,                      19-cv-8514 (PKC)

      -against-

                                                            OPINION
                                                             AND ORDER

UNITED STATES OF AMERICA,

                            Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Leonard Marchetta moves to vacate, set aside, or correct the sentence that was imposed on him. 28 U.S.C. § 2255. Marchetta entered a plea of guilty to conspiracy to distribute a controlled substance, oxycodone. He was sentenced principally to a term of 135 months' imprisonment, which was within the stipulated guideline range in his plea agreement and therefore within the scope of the appellate waiver in his plea agreement. Marchetta appealed his conviction and sentence; the appeal was dismissed in part and otherwise summarily affirmed by the United States Court of Appeals for the Second Circuit.

        Marchetta now asserts that his attorney advised him to accept a plea agreement that "lacked adequate consideration" and incorrectly calculated drug amounts, failed to note that the sentencing was outside the stipulated guideline range in the plea agreement, and failed to object to the prosecutor's purported breach of the plea agreement. He also claims that he was abandoned by his retained counsel on appeal and, therefore, proceeded pro se.

        For reasons explained below, the motion will be denied except for so much of the motion that claims that Marchetta was denied the assistance of counsel on his direct appeal will

be stayed pending an application by Marchetta to recall the mandate, reopen his appeal, and appoint counsel.

The Plea Agreement and Guilty Plea

Marchetta entered into a plea agreement with the government that provided for a stipulated guideline range, not binding on the Court, of 108 to 135 months' imprisonment. The plea allocution fully comported with the requirements of Rule 11, Fed. R. Crim. P. Of particular note are the following:

- Marchetta confirmed that he was satisfied with his lawyer's representation of him. (Plea Tr. at 5.)

- He acknowledged understanding that "[a]fter hearing from your lawyer and from the government, [the Court] will make [its] own determination of the correct guideline range that applies in your case. Even after determining the correct guideline range, [the Court] need not follow it and can sentence you all the way up to the statutory maximum." (Id. at 10-11.)

- He acknowledged having read and understood the plea agreement, and stated that he went over it with his attorney for an hour and a half. (Id. at 11-12.)

- He was advised by the Court as follows: "I want you to know that any prediction, calculation, or estimate that anyone has made to you as to what sentence I might give you is not binding by the Court, and if it turns out to be wrong, you will not be permitted to withdraw your guilty plea." (Id. at 12.)

- He acknowledged understanding that "[he] and the government have reached an agreement on what's called a stipulated guidelines range. . . .That agreement is binding on [Marchetta] and it's binding on the government, but it's not binding on the Court. . . . I have my own obligation to determine the correct guideline range in this case . . . ." (Id. at 13.)

- He acknowledged understanding that he "waived [his] right to appeal or collaterally attack the sentence unless the sentence I impose is above the stipulated guideline range in the plea agreement . . . ." (Id.)

- Defendant admitted, in relevant part: "I knowingly agreed with others to distribute oxycodone unlawfully. I am a physician assistant. As part of the agreement I issued oxycodone prescriptions that had no legitimate medical purpose." (Id. at 16.)

The Court made an express finding that Marchetta knew his rights, he knew the consequences of pleading guilty, and that there was a factual basis for the plea. Further, the Court found that the plea and the plea agreement were knowingly and voluntarily entered into, including the waiver of the right to appeal or attack a sentence under specified circumstances. (Plea Tr. at 17-18.)

Sentencing

At sentencing, the Court inquired whether defendant had any objections to the facts set forth in the Presentence Report ("PSR"), and his counsel responded that he did not. (Sentencing Tr. at 3-4.) With regard to the Guidelines calculation, the PSR included a two-level enhancement for abuse of the public trust to which the defendant objected. (Id. at 4.) When asked for its position, the government responded: "Your Honor, the government stands by the plea agreement. The probation department has recommended a two-level enhancement for breach of trust. The government is not seeking that enhancement." (Id. at 5.) The government further argued that the abuse of trust should be looked at from the perspective of the offense victims, but here the "patients" receiving the prescriptions were culpable members of the conspiracy and, hence, it had not sought the enhancement. (Id.)

The Court concluded that the two-level enhancement under U.S.S.G. § 3B1.3 applied; this was the recommended position of the Office of Probation expressed in the PSR. (Id. at 6-7.) It noted that the enhancement applies if the person in a position of public trust used that trust or a special skill in a manner that significantly facilitated the commission or

concealment of the offense. (Id.) Special skills are those not possessed by members of the public, but that require substantial education, training, or licensing. (Id. at 5.) The Court noted the physician assistant licensing requirements in Article 131(b) of New York Education Law. (Id. at 6.) The Court concluded: "It seems to me, under the circumstances, that the license and special skills were a key ingredient in this scheme. Without them, the defendant could not have written the script—the prescriptions—that were an essential ingredient in the criminal conduct." (Id. at 7.)

        The Court found that Total Offense Level 33, Criminal History Category I, applied, resulting in a Guidelines range of 135 to 168 months' imprisonment, the range recommended in the PSR. (Id.) The government urged that the defendant be sentenced principally to 135 months' incarceration, which was the top of the Stipulated Guidelines Range in the plea agreement and the bottom of the Guidelines range adopted by the Court. Defense counsel urged the Court to impose a sentence below the Stipulated Guidelines Range in the plea agreement.

        After hearing from the defendant, defense counsel, and the government, the Court announced its proposed sentence and the reasons for that sentence. The Court noted that from August 2012 to August 2014, Marchetta wrote 4,109 prescriptions for oxycodone resulting in distribution of 611,000 oxycodone tablets. (Id. at 32.) Further, the Court noted that some of the criminal activity took place while he was on bail in another case and that he was caught on a wiretap urging an intermediary to send a strong message to a person he believed to be a government cooperator, telling the intermediary: "Grab the wife, grab the kids, and tell him to shut the eff up." (Id. at 33-34.) The Court stated "that had I not imposed the enhancement for the abuse of trust I would have still had a guideline range including 135 months and would have

imposed it [i.e., the 135 months] based on the nature and circumstances of the crime, the history and characteristics and all other 3553(a) factors." (Id. at 36.)

At the conclusion of the Court's remarks, it inquired: "Does the defendant or his counsel have any objection to the Court's proposed sentence or to the statement of reasons for that sentence?" Defense counsel replied: "No, your Honor." (Id. at 36-37.) Sentence was then pronounced.

Marchetta was informed of his right to appeal and that if he could not afford the costs of an appeal he could apply to appeal as a poor person. (Id. at 38-39.) He was further informed that the time limits for filing a notice of appeal are brief and strictly enforced. (Id.) Consistent with Rule 32(j), Fed. R. Crim. P., he was also informed that, if he requested, the Clerk of Court would file a notice of appeal on his behalf immediately.[1] (Id. at 39.) On December 23, 2015, about a week after sentencing, the Court's Courtroom Deputy filed a notice of appeal on Marchetta's behalf with the Court's notation: "File on behalf of defendant per request made of Deputy Clerk." (Endorsed Notice of Appeal of Dec. 23, 2015 (Doc 70).)

Appeal[2]

Within weeks of filing the notice of appeal, the Second Circuit issued a conditional order of dismissal for failure to pay the filing fee. Order, United States v. Marchetta, No. 15-4149 (2d Cir. Jan. 7, 2016), Doc. No. 4.[3] The Order noted that the manual, "How to

---

[1] Rule 32(j)(2), Fed. R. Crim. P., provides: "If the defendant so requests, the clerk must immediately prepare and file a notice of appeal on the defendant's behalf."
[2] Citations to the docket in this sub-section refer to documents filed in the appellate case, No. 15-4149, before the United States Court of Appeals for the Second Circuit.
[3] Marchetta moved for leave to proceed in forma pauperis ("IFP") in the Circuit. Marchetta had been represented by retained counsel in the district court and thus never sought IFP status in the underlying proceeding. The Second Circuit held the motion before it in abeyance pending the district court's ruling on IFP status. Order, United States v. Marchetta, No. 15-4149 (2d Cir. April 6, 2018), Doc. No. 40. This Court granted IFP status. (Order of May 9, 2018 (Doc 110).)

Appeal a Criminal Case in the United States Court of Appeals for the Second Circuit," had been mailed with required forms.  (Id.)

The Clerk's entry on the docket reflects that Leo Duval, Marchetta's attorney, was "terminated" on October 30, 2017.  (Doc 20.)  Another entry on the same day reflects the mailing of instructions and forms to the defendant as a pro se litigant.  (Doc. 22.)  On November 14, 2017, Marchetta filed a notice of appearance in the Second Circuit, identifying himself as "an incarcerated pro se litigant."  (Doc 26.)  Marchetta never sought the appointment of counsel from the Court of Appeals, although he did later claim that his lawyer had "abandoned this matter." (Letter of Feb. 23, 2018 (Doc 35).)

Duval never appeared in the Second Circuit and did not comply with the Circuit's Local Rules.  Local Rule 4.1(a) mandates that a defendant's counsel in the district court, including retained counsel, remain as counsel on appeal unless and until "relieved" by the Court of Appeals.  The other sub-sections of Local Rule 4.1 provide the requirements for counsel to move to withdraw under certain circumstances.  See Second Circuit Local Rules 4.1(b)-(d).  While the docket reflects that Marchetta's counsel was "terminated," a motion to withdraw was neither filed by counsel nor granted by the Court.

The pro se brief ultimately filed by Marchetta raised two issues: (1) whether his plea of guilty was unknowing and involuntary because his counsel advised him that he would be sentenced to 60 months' imprisonment, regardless of the Guidelines range; and (2) whether the district court abused its discretion in applying the abuse of trust enhancement in U.S.S.G. § 3B1.3.  The government moved for summary affirmance, noting the appellate waiver in the plea agreement, and Marchetta timely opposed.

The Second Circuit granted the motion to dismiss with respect to the terms of imprisonment and supervised release, and granted the motion for summary affirmance with respect to the conviction, special assessment, conditions of supervised release, and forfeiture without prejudice to Marchetta's right to raise ineffective assistance in a motion pursuant to 28 U.S.C. § 2255.  (Doc 87.)

Procedural History

Marchetta filed the present motion pursuant to section 2255 on September 10, 2019.  (Doc. 1.)  He argues that his counsel was ineffective because he, inter alia, advised Marchetta to enter a guilty plea to "ensure" that he would receive a 60-month sentence; advised Marchetta to accept a plea agreement with erroneous sentencing guidelines ranges based on incorrectly calculated drug amounts; failed to object to the government's purported breach of the plea agreement during the sentencing proceeding; and "abandoned" Marchetta on appeal.  (Id.)

The Court ordered the government to answer (Doc 3), and the government timely opposed the motion.  (Doc 5.)  Marchetta replied to the government's opposition via mail.  (Letter of Nov. 25, 2019.)

LEGAL STANDARD

A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citation omitted).  When a petitioner attempts to establish "a constitutional error" by asserting ineffective assistance of counsel in violation of the Sixth Amendment, courts apply the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Sapia v. U.S., 433

F.3d 212, 218 (2d Cir. 2005).  Additionally, it is well settled that when a criminal defendant waives his or her right to collaterally attack a judgment by way of a guilty plea, the waiver is valid unless entered into involuntarily or without sufficient knowledge.  <u>United States v. Gomez-Perez</u>, 215 F.3d 315, 318 (2d Cir. 2000).

DISCUSSION

On a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must first overcome a presumption of effective representation by presenting evidence that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms.  <u>Strickland</u>, 466 U.S. at 688-90.  Second, the defendant must prove prejudice by showing a reasonable probability that, but for counsel's performance, the result of the case would have been different.  <u>Id.</u> at 694.  It is insufficient to show that counsel's errors had "some conceivable effect" on the outcome.  <u>Id.</u> at 693.  Instead, the defendant must show "a probability sufficient to undermine confidence in the outcome" of the case.  <u>Id.</u> at 694.

A. Marchetta Knowingly and Voluntarily Entered His Guilty Plea, and Understood the Possible Sentence That May be Imposed.

Marchetta asserts that defense counsel was ineffective because he wrongfully informed Marchetta that he would receive no more than a 60-month sentence.  Marchetta's present assertions are directly contradicted by his own sworn statements at the plea proceeding. First, Marchetta stated under oath that he was satisfied with his counsel's representation of him, and that he and his counsel reviewed the plea agreement together.  (Plea Tr. at 5, 11-12.)  At the plea proceeding, he was informed of the maximum sentence that could be imposed (<u>id.</u> at 7-8), that any prediction, calculation, or estimate he might have been given as to what sentence he might receive was not binding on the Court, and if it turned out to be wrong he would not be

permitted to withdraw his guilty plea. (Id. at 12.) While under oath, Marchetta said that he understood. (Id.) Marchetta further stated that he understood that pursuant to the plea agreement, if the Court were to sentence him within or below the Stipulated Guidelines Range, he could not appeal or collaterally attack the sentence. (Id. at 13-14.)

In the face of his unambiguous acknowledgements under oath at the plea proceeding, Marchetta's unsworn assertions to the contrary fail. A defendant's "self-inculpatory statements he made under oath at his plea allocution 'carry a strong presumption of verity' . . . ." United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Courts may properly disregard self-serving statements that contradict a defendant's prior representations under oath at a plea proceeding. United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (affirming district court's denial of motion to withdraw guilty plea).

Marchetta also asserts that his counsel was ineffective in advising him to enter into a plea agreement with a Stipulated Guidelines Range higher that what he should have faced. He presently argues that his counsel acquiesced to an improper calculation of "converted drug weight." He argues that the Stipulated Guidelines and the Court-adopted Guidelines should have been calculated on the basis of "units" of oxycodone rather than weight. The Guidelines were calculated on the basis of a weight of 3,741 grams of oxycodone, which translated into 25,067.112 kilograms of marijuana for Guidelines equivalency purposes.

The applicable Guidelines Manual was that effective November 1, 2014. (PSR ¶ 41.) Application Note 8(D) sets forth the drug equivalency tables for purposes of determining the base offense level under U.S.S.G. § 2D1.1. The Note states that 1 gram of "Oxycodone (actual)" is equivalent to 6,700 grams of marijuana. Note B to the Drug Quantity table states: "The term[] . . . 'Oxycodone (actual)' refer[s] to the weight of the controlled substance, itself,

contained in the pill, capsule, or mixture." The "Oxycodone (actual)" weight in the plea agreement and the PSR was determined to be 3,741.36 grams, which converts under equivalency tables to 25,067.112 kilograms of marijuana. A quantity of marijuana between 10,000 kilograms and 30,000 kilograms translates to a base offense level of 34. (PSR ¶ 42.)

Marchetta does not dispute that the actual weight of the oxycodone was 3,741.36 grams. Rather, he argues that his lawyer should have urged that an alternate means of calculation be used. Application Note 9 provides: "If the number of doses, pills, or capsules but not the weight of the controlled substance is known, multiply the number of doses, pills, or capsules by the typical weight per dose in the table below to estimate the total weight of the controlled substance (e.g., 100 doses of Mescaline at 500 milligrams per dose = 50 grams of mescaline)." A helpful "Typical Weight Per Unit Table" is included, but oxycodone is not one of the drugs for which a typical weight is provided. Here the weight of the controlled substance was known, 3,741.36 grams, and thus the use of Application Note 9 would not have been appropriate.[4]

Contrary to Marchetta's contentions, his counsel did not fail to raise a potentially meritorious challenge to the Guidelines calculation based upon drug weight.

B. The Enhancement Under U.S.S.G. § 3B1.3 Was Proper and
   the Government Did Not Breach the Plea Agreement.

The plea agreement, as noted, provided for a Stipulated Guidelines Range of 108 to 135 months' imprisonment. The parties agreed not to argue for a different Guidelines range

---

[4] Marchetta asserts that if "units" rather than marijuana equivalency had been used, he would have been at Base Offense Level 24. But that argument is based upon oxycodone being treated as one of the "Schedule I or II Depressants." In fact, the Drug Equivalency Tables (Application Note 8(D)) lists oxycodone as one of the "Schedule I or II Opiates."

absent circumstances not present here.  (Plea Agreement at 3.)  The plea agreement further provided, however:

> It is understood that . . . neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts.  In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

(Plea Agreement at 4.)

The government's sentencing memorandum urged that the Court sentence the defendant at the top of the Stipulated Guidelines Range to 135 months' imprisonment.  The Office of Probation prepared a PSR that recommended a two-level enhancement for abuse of trust under U.S.S.G. § 3B1.3.  (PSR ¶ 45.)  As this Court ultimately found, the enhancement was most appropriate because Marchetta abused a "special skill," defined as "a skill not possessed by the general public and usually requiring substantial education training or licensing" (Application Note 4), to "significantly facilitate[] the commission . . . of the offense. . . ."  Marchetta used his training and professional license as a New York State physician assistant to write the prescriptions for the medically unnecessary oxycodone.

At sentencing, the Court inquired as to the government's position on the enhancement and the government responded, as noted, that "the government stands by the plea agreement.  The probation department has recommended a two-level enhancement for breach of trust.  The government is not seeking that enhancement." (Sentencing Tr. at 5.)  The government then went on to explain why it had not sought the enhancement.

The plea agreement provided that "neither party may seek any departure or adjustment pursuant to the Guidelines that is not set forth herein."  (Plea Agreement at 3.)

- 11 -

Further, the plea agreement included a carve-out that allowed either party to respond to inquiries and make appropriate arguments regarding a contemplated sentence outside of the stipulated Guidelines range. (Id. at 4.) In responding to a question from the Court and reiterating its adherence to the plea agreement, the government did not breach the plea agreement. See United States v. Goodman, 165 F.3d 169, 173 (2d Cir. 1999) ("[T]he Government's compliance with the District Court's direction to comment on the facts and the law did not violate the plea agreement."); United States v. Dykes, 724 F. App'x 39, 43 (2d Cir. 2018) (Summary Order) (citing Goodman) ("[W]e have previously held that the government does not violate a plea agreement if it provides information in response to a sentencing judge's request.").

There was no basis for Marchetta's counsel to claim that the government had breached the plea agreement by responding to the Court's inquiry at sentencing; therefore, he did not fall below the objective standards of reasonableness in failing to do so. To the extent Marchetta argues that the government's breach of the plea agreement is an independent basis to grant his motion—apart from ineffective assistance of counsel—for substantially the same reasons articulated above, the Court finds this contention to be without merit. (See Doc 1 at 29-35 of 135.)

  C.  <u>Abandonment by Counsel on Appeal</u>

The Court need not reach the merits of Marchetta's claim that he was denied counsel on his direct appeal of his conviction and sentence. So much of his section 2255 motion as asserts the denial of counsel is stayed pending an application within 60 days of this Order to the United States Court of Appeals for the Second Circuit to recall the mandate, reopen the appeal, and appoint counsel.

CONCLUSION

The Court has considered the balance of petitioner's contentions and finds them to be without merit. The petition is DENIED except so much of his motion as asserts that he was abandoned by counsel on appeal is STAYED pending an application by Marchetta to be made by him within 60 days of this Order to the United States Court of Appeals for the Second Circuit to recall the mandate, reopen the appeal, and appoint counsel.

Petitioner has not made a substantial showing of the denial of a constitutional right as to the portion of the motion adjudicated herein and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 15, 2020

Mailed on April 15, 2020 to petitioner Leonard Marchetta, Prisoner No. 71458-054, FCI Fort Dix, P.O. Box 2000, Joint Base MDL, NJ 08640